**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | |
| | : | |
| v. | : | Criminal Action No.: 12-00189 (RC) |
| | : | |
| NANCY PRESTON, | : | Re Document No.: 53 |
| | : | |
| Defendant. | : | |

**MEMORANDUM OPINION**

GRANTING GOVERNMENT'S MOTION TO DISMISS JAMES PRESTON'S PETITION ASSERTING AN
INTEREST IN CERTAIN MERRILL LYNCH SECURITIES

**I. INTRODUCTION**

Defendant Nancy Preston was convicted of Mail Fraud in violation of 18 U.S.C. § 1341, and on December 12, 2014, this Court entered a Final Order of Forfeiture forfeiting $239,069 to the United States in the form of a money judgment pursuant to 18 U.S.C. § 981(a)(1)(C) and 28 U.S.C. § 2461(c). *See* Final Order of Forfeiture ("Final Order"), ECF No. 22. On June 17, 2014, the Court amended the Final Order pursuant to Federal Rule of Criminal Procedure 32.2(e)(2)(A) to include as substitute property pursuant to 21 U.S.C. § 853(p) cash in one Merrill Lynch account held by Defendant's husband, James Preston, and certain securities in a separate Merrill Lynch account held by the James W. Preston Trust (the "Trust"). *See* Fourth Amended Order of Forfeiture ("Fourth Amended Order" or "Order of Forfeiture"), ECF No. 43. On July 29, 2014, James Preston filed a Petition asserting an interest in the substitute property pursuant to Federal Rule of Criminal Procedure 32.2 and 21 U.S.C. § 853(n). *See* James W. Preston's Petition Asserting an Interest in Property (the "Petition"), ECF No. 48.

The Government has filed a motion to dismiss the Petition as to its assertion of an interest in the securities in the Trust's Merrill Lynch account.[1]  *See* Mot. Dismiss James Preston's Petition Asserting Interest in Certain Merrill Lynch Securities ("Motion to Dismiss"), ECF No. 53.  For the reasons explained below, the Court will grant the Government's motion.

## II.  FACTUAL BACKGROUND

From approximately 1992 to September 2011, Defendant Nancy Preston was the Corporate Controller for Clyde's Restaurant Group ("Clyde's").  *See* Statement of the Offense at 1, ECF No. 6.  On January 9, 2012, Ms. Preston confessed to agents of the Federal Bureau of Investigation ("FBI") that she had embezzled hundreds of thousands of dollars from Clyde's.  *See* Decl. Supp. Gov't's Mot. Amend Order Forfeiture ¶ 4, ECF No. 42-1.

Eleven days later, on January 20, 2012, there were two transfers from Merrill Lynch account number XXX-X1295 held by Ms. Preston ("Ms. Preston's 1295 Account") to Merrill Lynch account number XXX-X2092 held by her husband, James Preston ("Mr. Preston's 2092 Account"):  a cash transfer of $6,000 and a cash transfer of $5,500, for a total of $11,500 (the "Cash").  *See* Petition at 2; Petition Ex. 2 at 16, ECF No. 48-1.[2]  A statement for Merrill Lynch account number XXX-X3888 held by the Trust (the "Trust Account") indicates that the Trust was formed under an agreement dated the same day.  *See* Petition Ex. 3.  Three days later, on January 23, 2012, the following securities (the "Securities") were transferred from Ms. Preston's

---

[1]   The Government filed a separate motion to dismiss the Petition as to its assertion of an interest in the cash in Mr. Preston's Merrill Lynch account.  *See* Mot. Dismiss James Preston's Petition Asserting Interest in Cash Forfeited, ECF No. 60.

[2]   Mr. Preston filed all of the exhibits to his Petition as one attachment.  *See* ECF No. 48-1.  The Court's page citations are to the page numbers of that attachment, rather than the page numbers of the individual exhibits.

1295 Account to a separate account held by Mr. Preston, Merrill Lynch account number XXX-X1299 ("Mr. Preston's 1299 Account"):

| Description | Quantity |
|---|---|
| American Tower REIT Inc (HLDG Co) SHS | 267 |
| Tractor Supply Co | 260 |
| Lord Abbett Intl Core Equity Fund CL C | 4064 |
| Pioneer Cullen Value Fund CL C | 1299 |
| Franklin T/F Tr Va Tax Free Inc FD CL C | 1465 |
| Pioneer Emerging Markets FD CL C | 752 |
| Lord Abbett Classic Stock Fund CL C | 845 |
| Royce Pennsylvania Mutual Fund CL Consult | 1289 |
| Legg Mason Western Asset Managed Municipals FD C | 940 |

Petition at 2; Petition Ex. 1 at 10.[3] In his Petition, Mr. Preston alleges that "[t]he reason for the transfers is simple: Once Merrill Lynch discovered Mrs. Preston's criminal activity, it closed her account, forcing Mrs. Preston to transfer her funds to Mr. Preston's account." Petition at 2. Soon thereafter, the Securities were transferred from Mr. Preston's 1299 Account to the Trust Account.[4] *See* Petition at 2. Mr. Preston does not offer any explanation for this transfer in his Petition.

---

[3] In his Petition, Mr. Preston states that the total value of the Securities at the time of the transfer to Mr. Preston's 1299 Account was $190,567.41. *See* Petition at 2. This appears to be an error. From the account statement for Mr. Preston's 1299 Account provided as an exhibit to the Petition the total value at the time of the transfer appears to have been $190,529.27. *See* Petition Ex. 1 at 10. The Petition also alleges that the total value of the Cash and the Securities was $202,029.27, which would mean that the Securities were valued at $190,529.27. *See* Petition at 2.

[4] The date of this transfer is unclear from the Petition. In the Petition, Mr. Preston does not provide a date for the transfer (or any other relevant transfer) but he cites an account statement for Mr. Preston's 1299 Account attached as an exhibit to the Petition. *See* Petition at 2 (citing Petition Ex. 1). The cited account statement, however, covers the period of December 31, 2011 to January 31, 2012 and does not include the transfer of the Securities to the Trust Account. *See* Petition Ex. 1 at 1–12.

3

Mr. Preston alleges that neither he nor Ms. Preston intended for him to receive a benefit as a result of the transfers and that he received no benefit.  *See* Petition at 2–5.  He alleges that Ms. Preston transferred the Securities and the Cash to him "so that he could pay her debts."  *Id.* at 5.  He further alleges that, in order to pay those debts, rather than use the Cash or liquidate the Securities, he "liquidated his own securities of the same value [as the Securities and the Cash[5]] because liquidating those securities would result in a lower tax liability for the Prestons."  *Id.* at 2.  Mr. Preston claims that he used the proceeds of that liquidation in order to pay $150,000 to the Government in a pre-judgment partial payment of Ms. Preston's restitution obligation, Ms. Preston's legal fees, and federal and state taxes.  *See id.* at 3.  As support, Mr. Preston cites a November 2012 account statement for the Trust Account, which lists an outgoing wire transfer of $150,000 on November 19, 2012.  *See* Petition Ex. 3 at 33.  He also provides Ms. Preston's federal tax return for 2012 and a ledger from Cameron McEvoy, PLLC.  *See* Petition Exs. 4–5.  In his Petition, Mr. Preston does not provide detail concerning which securities he liquidated or which account held those securities, and he does not provide any explanation for why the payment for Ms. Preston's restitution obligation was made from the Trust Account.  Mr. Preston also does not explain how liquidating securities helped him avoid tax liability that he would have incurred had he used the Cash to make the restitution payment or why generally he could not use the Cash to make that payment.

On August 29, 2012, the Government filed a Criminal Information against Ms. Preston in this Court, and on September 26, 2012, Ms. Preston pleaded guilty to mail fraud in violation of 18 U.S.C. § 1341.  *See* Information, ECF No. 1; Minute Entry (Sept. 26, 2012).  On September

---

[5]   Throughout his Petition, Mr. Preston confusingly refers to both the Securities and the Cash collectively as "the Securities."  *See* Petition at 2.

26, 2012, the Court entered a Consent Order of Forfeiture forfeiting $389,069 to the United States in the form of a money judgment. *See* Consent Order of Forfeiture, ECF No. 9. On December 9, 2012, after the wire transfer from the Trust Account, the Government filed a consent motion seeking to reduce the forfeiture money judgment amount by $150,000 to account for "a partial payment to the victim as compensation for its loss." Consent Mot. for Final Order of Forfeiture, ECF No. 17. On December 12, 2012, the Court granted the consent motion, entering a Final Order of Forfeiture forfeiting $239,069 to the United States in the form of a money judgment pursuant to 18 U.S.C. § 981(a)(1)(C) and 28 U.S.C. § 2461(c). *See* Final Order. The Final Order provided that the Court shall retain jurisdiction to enforce the Final Order and to amend it as necessary pursuant to Federal Rule of Criminal Procedure 32.2(e). *See id.*

On June 17, 2014, the Court amended the Final Order to include $11,500 from Mr. Preston's 2092 Account and the Securities in the Trust Account as substitute property pursuant to 21 U.S.C. § 853(p). *See* Fourth Amended Order. The Government served the Fourth Amended Order on Mr. Preston, his counsel, and the Trust on July 3, 2014. *See* Notice of Service, ECF No. 51. On July 29, 2014, Mr. Preston filed his Petition asserting his interest in the substitute property.[6] *See* Petition.

---

[6] On August 25, 2014, Mr. Preston's daughter, Laura Preston, filed a "Co-Petition" asserting her interest in the Securities currently held in the Trust Account, alleging that she is the beneficiary of the Trust Account. *See* Laura Preston's Co-Petition Asserting an Interest in Property, ECF No. 56. Mr. Preston's opposition to the Motion to Dismiss is filed on behalf of both Mr. Preston *and* Laura Preston. *See* James W. Preston and Laura Preston's Opp. Pl.'s Mot. Dismiss, ECF No. 57. The Government's motion, however, concerned only Mr. Preston's Petition, and, therefore, Laura Preston is not a proper party to Mr. Preston's opposition. In ruling on the Motion to Dismiss, the Court considers only Mr. Preston's assertion of his interest in the Petition. The Government filed a separate motion to dismiss Laura Preston's "Co-Petition," which Laura Preston opposed. *See* Mot. Dismiss Laura Preston's Co-Petition, ECF No. 59;

### III. ANALYSIS

The Government argues that the Petition should be dismissed with respect to its assertion of an interest in the Securities, because: (1) the Petition does not establish that Mr. Preston has constitutional standing to contest the forfeiture; (2) the Petition does not establish that Mr. Preston has so-called "statutory standing" to contest the forfeiture; (3) the Petition fails to satisfy the pleading requirements of 21 U.S.C. § 853(n)(3); and (4) the Petition fails to state a claim for relief under 21 U.S.C. § 853(n)(6). The Court addresses each of these issues in turn.

#### A. Legal Framework for Adjudication of Third Party Interests

As a preliminary matter, it is useful for the Court to provide an overview of the legal framework for adjudicating a third party's asserted interest in property that has been ordered forfeited to the United States.

"The sole forum for a third party to address its interest in forfeited property is through a third party ancillary proceeding" under 21 U.S.C. § 853(n). *United States v. Emor*, 785 F.3d 671, 675 (D.C. Cir. 2015) (citing 21 U.S.C. § 853(n)). Any third party asserting a "legal interest" in forfeited property "may, within thirty days of the final publication of notice or his receipt of notice . . . whichever is earlier, petition the court for a hearing to adjudicate the validity of his alleged interest in the property." 21 U.S.C. § 853(n)(2). A petitioner under Section 853(n)

---

Laura Preston's Opp. Pl.'s Mot. Dismiss, ECF No. 62. The Court addresses Laura Preston's assertion of an interest in the Securities in its separate opinion concerning that motion.

In his Petition, Mr. Preston alternatively requests that, if the Court finds that the Securities and the Cash held in Mr. Preston's 2092 Account are subject to forfeiture, then the "Government refund him the $150,000 sum he paid to satisfy Mrs. Preston's restitution obligation, as that was not intended to be a gift made to Mrs. Preston." Petition at 6. He does not, however, request that the Court compel the Government to refund the payment, which appears to have already been paid to Clyde's, let alone provide any legal authority for the Court to do so. The Court also notes that Mr. Preston does not reaffirm this request in his opposition to the Motion to Dismiss.

must have standing under Article III of the Constitution. *See Emor*, 785 F.3d at 676. A petitioner must also have so-called "statutory standing," which is "nothing more than an inquiry into whether the statute at issue conferred a 'cause of action' encompassing 'a particular plaintiff's claim.'" *Id.* at 677 (quoting *Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 134 S.Ct. 1377, 1387 (2014). The statute also requires a petition to set forth "the nature and extent of the petitioner's right, title, or interest in the property, the time and circumstances of the petitioner's acquisition of the right, title, or interest in the property, any additional facts supporting the petitioner's claim, and the relief sought." 21 U.S.C. § 853(n)(3).

"Congress did not intend section 853(n) to serve as a vehicle by which *all* innocent third parties who are aggrieved by an order of criminal forfeiture can petition for judicial relief." *United States v. Lavin*, 942 F.2d 177, 185 (3d Cir. 1991). Rather, in order to be successful under Section 853(n), a petitioner must establish by a preponderance of the evidence that his legal right, title, or interest in the property meets the circumstances set forth in one of two provisions. The petitioner may establish under Section 853(n)(6)(A) that:

> the petitioner has a legal right, title, or interest in the property, and such right, title, or interest renders the order of forfeiture invalid in whole or in part because the right, title, or interest was vested in the petitioner rather than the defendant or was superior to any right, title, or interest of the defendant at the time of the commission of the acts which gave rise to the forfeiture of the property under [Section 853].

21 U.S.C. § 853(n)(6)(A). Or, the petitioner may establish under Section 853(n)(6)(B) that "the petitioner is a boda fide purchaser for the value of the right, title, or interest in the property and was at the time of purchase reasonably without cause to believe that the property was subject to forfeiture under [Section 853]." 21 U.S.C. § 853(n)(6)(B). If a petitioner does not meet either of these sets of criteria, then he is not entitled to relief.

Rule 32.2 of the Federal Rules of Criminal Procedure provides that, in an ancillary proceeding concerning a petition under Section 853(n), "the court may, on motion, dismiss the petition for lack of standing, for failure to state a claim, or for any other lawful reason." Fed. R. Crim. P. 32.2(c)(1)(A). A motion to dismiss a petition under Section 853(n) prior to discovery or a hearing is treated similarly to a motion to dismiss a civil complaint under Federal Rule of Civil Procedure 12(b). *See Willis Mgmt. (Vt.), Ltd. v. United States*, 652 F.3d 236, 241–42 (2d Cir. 2011). "A third-party petition must only provide 'enough facts to state a claim to relief that is plausible on its face' to survive dismissal." *United States v. Church & Dwight Co.*, 510 F. App'x 55, 57 (2d Cir. 2013) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). When considering a motion to dismiss a petition, the Court assumes all facts set forth in the petition to be true. *See* Fed. R. Crim. P. 32.2(c)(1)(A).

### B. Constitutional Standing

The Government argues that Mr. Preston fails to establish that he has standing under Article III of the Constitution to challenge the forfeiture of the Securities. *See* Motion to Dismiss at 4–5. The Court must determine whether Mr. Preston has constitutional standing as a threshold matter. *See Emor*, 785 F.3d at 676. "The requirements for a petition to demonstrate constitutional standing to challenge a forfeiture are very forgiving." *Id.* (internal quotation omitted). In this Circuit, "[i]n general, any colorable claim on the property suffices, if the claim of injury is 'redressable, at least in part, by a return of the property.'" *Id.* (quoting *United States v. 7725 Unity Ave. N.*, 294 F.3d 954, 957 (8th Cir. 2002)). In determining whether to dismiss a petition on jurisdictional grounds, such as standing, courts may consider evidence outside the petition. *See Emor*, 785 F.3d at 677.

The Court finds that Mr. Preston meets the forgiving minimum requirements for constitutional standing to challenge the forfeiture of the Securities. The Petition asserts an interest in the Securities held by the Trust and claims that Mr. Preston purchased the securities from Ms. Preston for fair consideration and without receiving any benefit. *See* Petition at 2. The Petition also refers to both Mr. Preston's 2092 Account and the Trust Account as "Mr. Preston's accounts." Petition at 6. While the Petition fails to provide any detail concerning Mr. Preston's role with respect to the Trust or the Trust Account, in his opposition to the Motion to Dismiss, Mr. Preston states that he is the trustee of the Trust and has the rights of an "absolute owner" concerning the Trust's stocks or other securities under Virginia law. *See* James W. Preston and Laura Preston's Opp. Pl.'s Mot. Dismiss ("Opp.") at 5, ECF No. 57. The Court finds that, for purposes of constitutional standing, Mr. Preston has a colorable claim to the Securities in his alleged capacity as the trustee of the Trust. Mr. Preston also sufficiently asserts an injury that is redressable, at least in part, by a return of the property. He claims that because he received no benefit from the transfer of the Securities, forfeiture of the Securities will cause him to "continue[] to suffer monetarily." Petition at 6. *See also Emor*, 785 F.3d at 676 (stating that "the seizure of property without due process is the quintessential injury"). Returning the Securities, would, therefore, redress his alleged injury.

### C.  Statutory Standing

The Government next argues that Mr. Preston fails to establish "statutory standing." Motion to Dismiss at 4–6. Jurisprudence concerning statutory standing is less than clear. The Supreme Court has acknowledged that the term is somewhat "misleading." *Lexmark Int'l v. Static Control Components, Inc.*, 134 S. Ct. 1377, 1387 n.4 (2014). The D.C. Circuit recently clarified in *Emor* that "[s]tatutory standing is not really about standing at all, in the sense that it

limits a 'court's statutory or constitutional *power* to adjudicate the case.' Instead, statutory standing is nothing more than an inquiry into whether the statute at issue conferred a 'cause of action' encompassing 'a particular plaintiff's claim.'" *Emor*, 785 F.3d at 677 (quoting *Lexmark Int'l*, 134 S. Ct. at 1387). Essentially, the Court must determine whether Mr. Preston falls within the class of persons whom Congress authorized to file a petition in an ancillary proceeding. *See Lexmark Int'l*, 134 S. Ct. at 1387. In making this determination, the Court must treat the factual allegations in the Petition as true and cannot consider any factual findings or legal conclusions drawn from outside the pleadings. *See Emor*, 785 F.3d at 677.

Section 853(n)(2) authorizes "[a]ny person, other than the defendant, asserting a legal interest in property which has been ordered forfeited to the United States" pursuant to Section 853 to petition the Court. 21 U.S.C. § 853(n)(2). For purposes of statutory standing, therefore, the Court must determine whether the Petition "assert[s] a legal interest" in the Securities.[7] In making this determination, courts generally look to state law. *See, e.g., United States v. Oregon*,

---

[7] There does not appear to be a consensus among the courts concerning the precise contours of the statutory standing inquiry in the context of Section 853(n), particularly in light of the Supreme Court's discussion of the general concept of statutory standing in *Lexmark*. It is unclear whether a court should consider, in addition to Section 853(n)(2), the pleading requirements of Section 853(n)(3) and whether the petitioner has pleaded a claim for relief under Section 853(n)(6) or whether those requirements are separate from the concept of statutory standing. In *Emor*, the D.C. Circuit assessed whether, for purposes of statutory standing, a petitioner fell within the requirements of Section 853(n)(2). *See Emor*, 785 F.3d at 676–78. Though the court in *Emor* mentioned the requirements of Section 853(n)(3) and referred to statutory standing as a determination of "whether a petitioner stated a valid claim for relief" in the section of its analysis concerning statutory standing, it addressed Section 853(n)(6) in a separate section of its opinion. *Id.* at 677–81. For clarity, the Court considers only Section 853(n)(2) in determining whether Mr. Preston has statutory standing and considers the pleading requirements of Section 853(n)(3) and whether the Petition pleads a claim for relief under Section 853(n)(6) separately. The Court's organization of its analysis has no substantive bearing on the outcome of that analysis, because "statutory standing 'is itself a merits issue.'" *Id.* at 677 (quoting *United States v. Oregon*, 671 F.3d 484, 490 n.6 (4th Cir. 2012)). *See also CGM LLC v. BellSouth Telecommunications, Inc.* 664 F.3d 46, 52 (4th Cir. 2011) (explaining that dismissal for lack of statutory standing is "effectively the same as a dismissal for failure to state a claim").

671 F.3d 484, 490 (4th Cir. 2012) ("Although the forfeiture issue here is a matter of federal law, we generally refer to state law in determining whether a petition has a legal interest in forfeited property.").

In his Petition, Mr. Preston does not allege facts that, if true, would establish that he has a legal interest in the Securities, which are held in the Trust Account. As discussed, *supra*, the Petition does not allege any facts concerning Mr. Preston's role with respect to the Trust. As the Government observes, "[t]he Petition is devoid of any reference as to how James Preston, the grantor of an irrevocable trust, has a legal interest in the trust property under state law." Motion to Dismiss at 5–6. While Mr. Preston states in his opposition to the Motion to Dismiss that he is the trustee of the trust and that he has a legal interest in the property held by the Trust Account under Virginia law, unlike with respect to the issue of constitutional standing, the Court cannot consider factual allegations outside the Petition when determining statutory standing. The Petition does not reference any state law or the Trust's governing documents. Nor does it even contain the word "trustee" or indicate who the beneficiary or beneficiaries of the Trust are. It makes no distinction whatsoever between Mr. Preston's alleged interest in the Cash held in his personal account and the Securities held in the Trust Account.

In his Petition, Mr. Preston fails to plead a legal interest in the Securities, and, therefore, he fails to establish statutory standing to contest their forfeiture. On this basis alone, the Petition should be dismissed as to the Securities.

### D. Pleading Requirements Under Section 853(n)(3)

Even if the Petition could be construed as asserting a legal interest in the Securities sufficient to establish statutory standing, it also fails to satisfy the more detailed pleading requirements of Section 853(n)(3). That provision requires the Petition to "set forth the nature

and extent of the petitioner's right, title, or interest in the property, the time and circumstances of the petitioner's acquisition of the right, title or interest in the property, any additional facts supporting the petitioner's claim, and the relief sought." 21 U.S.C. § 853(n)(3). These are not "simply technical requirements, but are construed strictly to discourage false or frivolous claims." *United States v. Ceballos-Lepe*, 977 F. Supp. 2d 1085, 1088–89 (D. Utah 2013) (citing *United States v. Ginn*, 799 F. Supp. 2d 645, 647 (E.D. La. 2010); *United States v. Burge*, 829 F. Supp. 2d 664, 667 (C.D. Ill. 2011)).

The Petition clearly fails to set forth the "nature and extent" of Mr. Preston's interest in the Securities, because, as discussed with respect to the issue of statutory standing, the Petition fails to allege anything about his alleged interest, such as his role with respect to the Trust and its property.

The Petition also fails to set forth the "time and circumstances" of Mr. Preston's acquisition of any interest in the Securities. The Securities were first transferred from Ms. Preston's 1295 Account to Mr. Preston's 1299 Account. The Petition sets forth the time of that transfer by attaching, referencing, and incorporating an account statement that provides a date of January 23, 2012. *See* Petition at 2; Petition Ex. 1 at 10. It also sets forth the circumstances of that transfer by alleging that Merrill Lynch forced Ms. Preston to close her account and transfer the Securities due to her criminal activity and that Ms. Preston transferred the Securities to Mr. Preston solely in order to enable him to pay her debts on her behalf.[8]  *See* Petition at 2. Mr.

---

[8]  The Government strongly contests this factual allegation, submitting evidence of a check drawn from Ms. Preston's 1295 Account in October 2012, nine months after Merrill Lynch allegedly forced Ms. Preston to close it. *See* Motion to Dismiss at 9; Motion to Dismiss Ex. B, ECF No. 53-3. The Federal Rules of Criminal Procedure, however, require the Court to assume that the facts set forth in the Petition are true for purposes of ruling on a motion to dismiss. *See* Fed. R. Crim. P. 32.2(c)(1)(A); *Emor*, 785 F.3d at 677.

Preston did not, however, retain the Securities as his personal property. Instead, he transferred them to the Trust Account. As discussed, *supra*, the text of the Petition does not provide a date for this transfer, and the cited attachment does not contain a record of the transfer. *See* Petition at 2 (citing Petition Ex. 1); Petition Ex. 1 at 1–12. More importantly, neither the Petition nor Mr. Preston's opposition to the Motion to Dismiss offer any explanation whatsoever for this transfer.

### E.  Failure to State a Claim Under Section 853(n)(6)

The Petition can also be independently dismissed because it fails to state a claim for relief under Section 853(n)(6). [9]

In order to survive a motion to dismiss, a petition must allege facts sufficient to state a valid claim of relief. *See Emor*, 785 F.3d at 678; *Church & Dwight Co.*, 510 F. App'x at 57. A petitioner is only entitled to relief if he establishes that his legal right, title, or interest in the forfeited property meets the circumstances set forth in either Section 853(n)(6)(A) or Section 853(n)(6)(B), and, therefore, he must allege facts sufficient to state a claim under one of the two

---

By a separate motion, the Government also asks the Court to take judicial notice of a declaration by Greg Rose, in-house counsel for Merrill Lynch, which was filed in a parallel civil case that the Government has brought against Mr. and Ms. Preston seeking to void the transfers of the Securities pursuant to 28 U.S.C. § 3304. *See* Mot. Court Take Judicial Notice Public Record, ECF No. 70; Decl. Greg Rose, ECF No. 70-2. In his declaration, Mr. Rose states that "[a]t no time did Merrill Lynch ask Mrs. Preston to close account xxx-x1295" and that Merrill Lynch maintained Ms. Preston's 1295 Account until August 30, 2014, "when the account was purged from the Merrill Lynch system following thirteen months of inactivity." Decl. Greg Rose ¶ 1. The Court finds that there are ample grounds to dismiss the Petition without considering this declaration and therefore will deny the Government's motion to take judicial notice of the declaration as moot.

[9]   The Government consolidates its arguments concerning the pleading requirements of Section 853(n)(3) with the issue of whether Mr. Preston fails to state a claim for relief under Section 853(n)(6). *See* Motion to Dismiss at 7–8. The statutory text, however, does not equate the two provisions. Indeed, it is conceivable that a petition could satisfy the requirements of Section 853(n)(3) by setting forth, among other things, the nature and extent of the petitioner's interest and the time and circumstances of the petitioner's acquisition of that interest and yet fail to state a claim under the circumstances provided in Section 853(n)(6). Therefore, the Court analyzes the two provisions separately.

provisions. *See United States v. Hailey*, 924 F. Supp. 2d 648, 658 (D. Md. 2013) ("The availability of a motion to dismiss indicates that to state a claim, one of the § 853(n)(6) bases must be pled.").

As the Government observes, it is unclear from the Petition whether Mr. Preston is pleading under Section 853(n)(6)(A) or Section 853(n)(6)(B). *See* Motion to Dismiss at 7–8. Such a deficiency can be fatal to a petition. *See, e.g., United States v. Ceballos-Lepe*, 977 F. Supp. 2d 1085, 1090 (D. Utah 2013) (dismissing a petition in part because the petitioner did not "specif[y] in her petition whether her interest comes under § 853(n)(6)(A) or (6)(B)"). The Petition does not specifically cite Section 853(n)(6) and it uses language that is similar to both Section 853(n)(6)(A) and Section 853(n)(6)(B). *See, e.g.,* Petition at 5 (stating as a section heading that "Mr. Preston's right, title and interest . . . is superior to Mrs. Preston's interest . . . ."); *id.* (stating that "Mr. Preston's equivalent exchange made him a bona fide purchase [sic] for value as contemplated by 21 U.S.C. § 853(n) because he did not know that paying full value for Mrs. Preston's Securities could subject him to any liability nor did he receive any financial benefit for the exchange"); *id.* (stating that "Mrs. Preston received full consideration for her transfer"); *id.* at 6 (requesting that the Court modify the Order of Forfeiture "to reflect that Mr. Preston has a superior right, title and interest to the funds"). Even Mr. Preston's response to the Government's observation in his opposition to the Motion to Dismiss fails to clear the confusion. *See* Opposition at 1–2 (arguing that the Court should deny the Motion to Dismiss because it "fails to establish that Mr. Preston does not have a superior right, title and interest to the funds").[10] Though Mr. Preston states that his claim "falls squarely under Section A," he also

---

[10] This argument also misstates the burden imposed by the criminal forfeiture statute. The statute requires the petitioner to establish the applicability of either of the criteria in Section 853(n)(6). *See* 21 U.S.C. § 853(n)(6). The Government is not required to establish anything in

14

states, without explicitly referencing Section 853(n)(6)(B), that he "alternatively argued that '[his] equivalent exchange made him a bona fide purchaser for value' – a defense that is also applicable to this case." *Id.* at 6–7 (quoting Petition at 5). The Court generously interprets the Petition (and Mr. Preston's subsequent explanation) to claim that both provisions are applicable in the alternative and will therefore address both of them.

1. Section 853(n)(6)(A)

To be successful under Section 853(n)(6)(A), a petitioner must establish that, "at the time of the commission of the acts which gave rise to the forfeiture," the interest in the forfeited property was vested in the petitioner rather than the defendant or the petitioner's interest was superior to any interest of the defendant. 21 U.S.C. § 853(n)(6)(A).

Even assuming that the Petition adequately pleads an interest in the Securities, it nevertheless fails to state a claim under this provision. As discussed, *supra*, the Petition fails to allege the specific timing of the transfer of the Securities to the Trust Account. It also fails to allege any relationship in timing between that transfer (or the previous transfer from Ms. Preston's 1295 Account to Mr. Preston's 1299 Account) and the commission of the acts which gave rise to the forfeiture of the Securities. It is clear from the face of the Petition, however, that the transfers occurred later.

The Securities were included in the Order of Forfeiture as substitute property pursuant to Section 853(p), rather than as property subject to forfeiture under Section 853(a). Under Section 853(p), property becomes subject to forfeiture as substitute property when, as a result of any act or omission of the defendant, property subject to forfeiture under Section 853(a) meets one of

---

the ancillary proceeding. Moreover, during the motion to dismiss stage, the focus is on the sufficiency of the Petition and the Court must take all factual allegations in the Petition as true. *See* Fed. R. Crim. P. 32.2(c)(1)(A).

five conditions. *See* 21 U.S.C. § 853(p)(1). When the Government sought to include the Securities in the Order of Forfeiture as substitute property, it argued that Ms. Preston's acknowledgement that she "diverted Clyde's money to pay her personal credit cards; charged corporate credit cards in Clyde's name to pay for her unauthorized personal expense; and used a Clyde's vendor paid by Clyde's funds to obtain goods for her personal use" was sufficient to demonstrate satisfaction of one of those conditions. Gov't's Fourth Mot. Amend Order of Forfeiture at 7 (citing 21 U.S.C. § 853(p)(1)(B) (providing that property is subject to forfeiture as substitute property if property subject to forfeiture under Section 853(a) "has been transferred or sold to, or deposited with, a third party")). The Court agreed, finding that the Securities were subject to forfeiture under Section 853(p). *See* Fourth Amended Order at 2. For purposes of Section 853(n)(6)(A), therefore, "the time of the commission of the acts which gave rise to the forfeiture" of the Securities was when Ms. Preston transferred the embezzled Clyde's funds to third parties.

Ms. Preston admitted that she transferred the embezzled Clyde's funds to third parties from 2001 to 2011. *See* Statement of the Offense at 1. On the face of the Petition, it is clear that Ms. Preston did not transfer the Securities to Mr. Preston's 1299 Account until January 2012, and the Securities were not transferred to the Trust Account until after that. Mr. Preston does not allege that he acquired an interest in the Securities prior to those transfers, and, therefore, the Petition fails to state a claim under Section 853(n)(6)(A).

2. Section 853(n)(6)(B)

To be successful under Section 853(n)(6)(B), a petitioner must establish that he is a "bona fide purchaser for value" of the property and that, at the time of purchase, he was

"reasonably without cause to believe that the property was subject to forfeiture." 21 U.S.C. § 853(n)(6)(B).

Mr. Preston does not allege facts that are sufficient to state a claim under this provision. Mr. Preston alleges that he is a bona fide purchaser for value of the Securities, because he paid full value for them by paying Ms. Preston's debts in an equivalent value. *See* Petition at 2–5. He also alleges that he "did not know that paying full value for Mrs. Preston's Securities could subject him to any liability." *Id.* at 5. These facts, if true, are not sufficient to satisfy Section 853(n)(6)(B). Even if Mr. Preston was an innocent bona fide purchaser of the Securities, he still must allege that he was without cause to believe that the Securities were subject to forfeiture. *See United States v. Jimerson*, 5 F.3d 1453, 1455 (11th Cir. 1993) (stating that Section 853 "does not contain an innocent owner provision" and that "alleged innocence, standing alone, cannot defeat the Government's interest in criminally forfeited property"). Whether he knew that he could be personally liable is not the correct standard. The statute concerns knowledge regarding whether the property was subject to forfeiture. Mr. Preston makes no allegations concerning his knowledge on this issue or whether a reasonable person would have known that the Securities were subject to forfeiture. On the contrary, Mr. Preston actually alleges facts that, if true, would demonstrate the *inapplicability* of the bona fide purchaser provision. According to the Petition, Ms. Preston was forced to transfer the Securities to him because of her criminal activity, meaning that he was aware at the time of the transfers that Ms. Preston was subject to criminal liability. Even more significantly, if the transfer had been made with the intention that the Securities (or an amount equivalent to their value) would be used to satisfy Ms. Preston's restitution obligation, as he alleges, then Mr. Preston was well aware that the Securities were subject to forfeiture.

On the face of the Petition, it is implausible that Mr. Preston was a bona fide purchaser for value who was reasonably without cause to believe that the Securities were subject to forfeiture. The Petition therefore also fails to state a claim for relief under Section 853(n)(6)(B).

## IV.  CONCLUSION

Mr. Preston claims that he has suffered an injury due to the forfeiture of the Securities to the United States. The criminal forfeiture statute, however, does not shelter all third parties from injury, even if they are innocent of the underlying crime. Rather, the statute offers relief only to those third parties who meet its standing and pleading requirements and whose interests meet a specific set of circumstances. The Petition fails on all three grounds. For the foregoing reasons, the Court grants the Government's Motion to Dismiss James Preston's Petition Asserting an Interest in Certain Merrill Lynch Securities, ECF No. 53. An order consistent with this Memorandum Opinion is separately and contemporaneously issued.

Dated:  August 24, 2015                                                               RUDOLPH CONTRERAS
                                                                                                          United States District Judge