**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | |
| | : | |
| v. | : | Criminal Action No.: 12-00189 (RC) |
| | : | |
| NANCY PRESTON, | : | Re Document No.:    60 |
| | : | |
| Defendant. | : | |

**MEMORANDUM OPINION**

GRANTING GOVERNMENT'S MOTION TO DISMISS JAMES PRESTON'S PETITION ASSERTING AN INTEREST IN CASH FORFEITED

**I.  INTRODUCTION**

Defendant Nancy Preston was convicted of Mail Fraud in violation of 18 U.S.C. § 1341, and on December 12, 2014, this Court entered a Final Order of Forfeiture forfeiting $239,069 to the United States in the form of a money judgment pursuant to 18 U.S.C. § 981(a)(1)(C) and 28 U.S.C. § 2461(c).  *See* Final Order of Forfeiture ("Final Order"), ECF No. 22.  On June 17, 2014, the Court amended the Final Order pursuant to Federal Rule of Criminal Procedure 32.2(e)(2)(A) to include as substitute property pursuant to 21 U.S.C. § 853(p) cash in one Merrill Lynch account held by Defendant's husband, James Preston, and certain securities in a separate Merrill Lynch account held by the James W. Preston Trust (the "Trust").  *See* Fourth Amended Order of Forfeiture ("Fourth Amended Order" or "Order of Forfeiture"), ECF No. 43.  On July 29, 2014, James Preston filed a Petition asserting an interest in the substitute property pursuant to Federal Rule of Criminal Procedure 32.2 and 21 U.S.C. § 853(n).  *See* James W. Preston's Petition Asserting an Interest in Property (the "Petition"), ECF No. 48.

The Government has filed a motion to dismiss the Petition as to its assertion of an interest in the cash held in Mr. Preston's Merrill Lynch account.[1]  *See* Mot. Dismiss James Preston's Petition Asserting Interest in Cash Forfeited from Merrill Lynch Account Number 79522092 ("Motion to Dismiss"), ECF No. 60.

## II. FACTUAL BACKGROUND

From approximately 1992 to September 2011, Defendant Nancy Preston was the Corporate Controller for Clyde's Restaurant Group ("Clyde's").  *See* Statement of the Offense at 1, ECF No. 6.  On January 9, 2012, Ms. Preston confessed to agents of the Federal Bureau of Investigation ("FBI") that she had embezzled hundreds of thousands of dollars from Clyde's.  *See* Decl. Supp. Gov't's Mot. Amend Order Forfeiture ¶ 4, ECF No. 42-1.

Eleven days later, on January 20, 2012, there were two transfers from Merrill Lynch account number XXX-X1295 held by Ms. Preston ("Ms. Preston's 1295 Account") to Merrill Lynch account number XXX-X2092 held by her husband, James Preston ("Mr. Preston's 2092 Account"):  a cash transfer of $6,000 and a cash transfer of $5,500, for a total of $11,500 (the "Cash").  *See* Petition at 2; Petition Ex. 2 at 16, ECF No. 48-1.[2]  A statement for Merrill Lynch account number XXX-X3888 held by the Trust (the "Trust Account") indicates that the Trust was formed under an agreement dated the same day.  *See* Petition Ex. 3.  Three days later, on January 23, 2012, various securities (the "Securities") were transferred from Ms. Preston's 1295

---

[1]   The Government filed a separate motion to dismiss the Petition as to its assertion of an interest in the securities that originated in Ms. Preston's account and were ultimately transferred to the Trust's account.  *See* Mot. Dismiss James Preston's Petition Asserting Interest in Certain Merrill Lynch Securities, ECF No. 53.

[2]   Mr. Preston filed all of the exhibits to his Petition as one attachment.  *See* ECF No. 48-1. The Court's page citations are to the page numbers of that attachment, rather than the page numbers of the individual exhibits.

Account to a separate account held by Mr. Preston, Merrill Lynch account number XXX-X1299 ("Mr. Preston's 1299 Account"). Petition at 2; Petition Ex. 1 at 10.[3] In his Petition, Mr. Preston alleges that "[t]he reason for the transfers is simple: Once Merrill Lynch discovered Mrs. Preston's criminal activity, it closed her account, forcing Mrs. Preston to transfer her funds to Mr. Preston's account." Petition at 2. Soon thereafter, the Securities were transferred from Mr. Preston's 1299 Account to the Trust Account. *See* Petition at 2. Mr. Preston does not offer any explanation for this transfer in his Petition.

Mr. Preston alleges that neither he nor Ms. Preston intended for him to receive a benefit as a result of the transfers and that he received no benefit. *See* Petition at 2–5. He alleges that Ms. Preston transferred the Securities and the Cash to him "so that he could pay her debts." *Id.* at 5. He further alleges that, in order to pay those debts, rather than use the Cash or liquidate the Securities, he "liquidated his own securities of the same value [as the Securities and the Cash[4]] because liquidating those securities would result in a lower tax liability for the Prestons." *Id.* at 2. Mr. Preston claims that he used the proceeds of that liquidation in order to pay $150,000 to the Government in a pre-judgment partial payment of Ms. Preston's restitution obligation, Ms. Preston's legal fees, and federal and state taxes. *See id.* at 3. As support, Mr. Preston cites a November 2012 account statement for the Trust Account, which lists an outgoing wire transfer of $150,000 on November 19, 2012. *See* Petition Ex. 3 at 33. He also provides Ms. Preston's

---

[3]  In his Petition, Mr. Preston states that the total value of the Securities at the time of the transfer to Mr. Preston's 1299 Account was $190,567.41. *See* Petition at 2. From the account statement for Mr. Preston's 1299 Account provided as an exhibit to the Petition, however, the total value at the time of the transfer appears to have been $190,529.27. *See* Petition Ex. 1 at 10. The Petition also alleges that the total value of the Cash and the Securities was $202,029.27, which would mean that the Securities were valued at $190,529.27. *See* Petition at 2.

[4]  Throughout his Petition, Mr. Preston confusingly refers to both the Securities and the Cash collectively as "the Securities." *See* Petition at 2. The implications of this confusing terminology are discussed, *infra*.

3

federal tax return for 2012 and a ledger from Cameron McEvoy, PLLC. *See* Petition Exs. 4–5. In his Petition, Mr. Preston does not provide detail concerning which securities he liquidated or which account held those securities, and he does not provide any explanation for why the payment for Ms. Preston's restitution obligation was made from the Trust Account. Mr. Preston also does not explain how liquidating securities helped him avoid tax liability that he would have incurred had he used the Cash to make the restitution payment or why generally he could not use the Cash to make that payment.

On August 29, 2012, the Government filed a Criminal Information against Ms. Preston in this Court, and on September 26, 2012, Ms. Preston pleaded guilty to mail fraud in violation of 18 U.S.C. § 1341. *See* Information, ECF No. 1; Minute Entry (Sept. 26, 2012). On September 26, 2012, the Court entered a Consent Order of Forfeiture forfeiting $389,069 to the United States in the form of a money judgment. *See* Consent Order of Forfeiture, ECF No. 9. On December 9, 2012, after the wire transfer from the Trust Account, the Government filed a consent motion seeking to reduce the forfeiture money judgment amount by $150,000 to account for "a partial payment to the victim as compensation for its loss." Consent Mot. for Final Order of Forfeiture, ECF No. 17. On December 12, 2012, the Court granted the consent motion, entering a Final Order of Forfeiture forfeiting $239,069 to the United States in the form of a money judgment pursuant to 18 U.S.C. § 981(a)(1)(C) and 28 U.S.C. § 2461(c). *See* Final Order. The Final Order provided that the Court shall retain jurisdiction to enforce the Final Order and to amend it as necessary pursuant to Federal Rule of Criminal Procedure 32.2(e). *See id.*

On June 17, 2014, the Court amended the Final Order to include the Cash and the Securities as substitute property pursuant to 21 U.S.C. § 853(p). *See* Fourth Amended Order.

The Government served the Fourth Amended Order on Mr. Preston, his counsel, and the Trust on July 3, 2014. *See* Notice of Service, ECF No. 51. On July 29, 2014, Mr. Preston filed his Petition asserting his interest in the substitute property.[5] *See* Petition.

### III. ANALYSIS

The Government argues that the Petition should be dismissed with respect to its assertion of an interest in the Cash, because the Petition fails to satisfy the pleading requirements of 21 U.S.C. § 853(n)(3) and fails to state a claim for relief under 21 U.S.C. § 853(n)(6). The Court addresses these issues in turn.

#### A. Legal Framework for Adjudication of Third Party Interests

As a preliminary matter, it is useful for the Court to provide an overview of the legal framework for adjudicating a third party's asserted interest in property that has been ordered forfeited to the United States.

"The sole forum for a third party to address its interest in forfeited property is through a third party ancillary proceeding" under 21 U.S.C. § 853(n). *United States v. Emor*, 785 F.3d 671, 675 (D.C. Cir. 2015) (citing 21 U.S.C. § 853(n)). Any third party asserting a "legal interest" in forfeited property "may, within thirty days of the final publication of notice or his receipt of notice . . . whichever is earlier, petition the court for a hearing to adjudicate the validity of his alleged interest in the property." 21 U.S.C. § 853(n)(2). A petitioner under Section 853(n)

---

[5] In his Petition, Mr. Preston alternatively requests that, if the Court finds that the Securities and the Cash are subject to forfeiture, then the "Government refund him the $150,000 sum he paid to satisfy Mrs. Preston's restitution obligation, as that was not intended to be a gift made to Mrs. Preston." Petition at 6. He does not, however, request that the Court compel the Government to refund the payment, which appears to have already been paid to Clyde's, let alone provide any legal authority for the Court to do so. The Court also notes that Mr. Preston does not reaffirm this request in his opposition to the Motion to Dismiss.

5

must have standing under Article III of the Constitution. *See Emor*, 785 F.3d at 676. A petitioner must also have so-called "statutory standing," which is "nothing more than an inquiry into whether the statute at issue conferred a 'cause of action' encompassing 'a particular plaintiff's claim.'" *Id.* at 677 (quoting *Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 134 S.Ct. 1377, 1387 (2014). The statute also requires a petition to set forth "the nature and extent of the petitioner's right, title, or interest in the property, the time and circumstances of the petitioner's acquisition of the right, title, or interest in the property, any additional facts supporting the petitioner's claim, and the relief sought." 21 U.S.C. § 853(n)(3).

"Congress did not intend section 853(n) to serve as a vehicle by which *all* innocent third parties who are aggrieved by an order of criminal forfeiture can petition for judicial relief." *United States v. Lavin*, 942 F.2d 177, 185 (3d Cir. 1991). Rather, in order to be successful under Section 853(n), a petitioner must establish by a preponderance of the evidence that his legal right, title, or interest in the property meets the circumstances set forth in one of two provisions. The petitioner may establish under Section 853(n)(6)(A) that:

> the petitioner has a legal right, title, or interest in the property, and such right, title, or interest renders the order of forfeiture invalid in whole or in part because the right, title, or interest was vested in the petitioner rather than the defendant or was superior to any right, title, or interest of the defendant at the time of the commission of the acts which gave rise to the forfeiture of the property under [Section 853].

21 U.S.C. § 853(n)(6)(A). Or, the petitioner may establish under Section 853(n)(6)(B) that "the petitioner is a boda fide purchaser for the value of the right, title, or interest in the property and was at the time of purchase reasonably without cause to believe that the property was subject to forfeiture under [Section 853]." 21 U.S.C. § 853(n)(6)(B). If a petitioner does not meet either of these sets of criteria, then he is not entitled to relief.

Rule 32.2 of the Federal Rules of Criminal Procedure provides that, in an ancillary proceeding concerning a petition under Section 853(n), "the court may, on motion, dismiss the petition for lack of standing, for failure to state a claim, or for any other lawful reason." Fed. R. Crim. P. 32.2(c)(1)(A). A motion to dismiss a petition under Section 853(n) prior to discovery or a hearing is treated similarly to a motion to dismiss a civil complaint under Federal Rule of Civil Procedure 12(b). *See Willis Mgmt. (Vt.), Ltd. v. United States*, 652 F.3d 236, 241–42 (2d Cir. 2011). "A third-party petition must only provide 'enough facts to state a claim to relief that is plausible on its face' to survive dismissal." *United States v. Church & Dwight Co.*, 510 F. App'x 55, 57 (2d Cir. 2013) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). When considering a motion to dismiss a petition, the Court assumes all facts set forth in the petition to be true. *See* Fed. R. Crim. P. 32.2(c)(1)(A).

### B. Pleading Requirements Under Section 853(n)(3)

Section 853(n)(3) requires a petition to "set forth the nature and extent of the petitioner's right, title, or interest in the property, the time and circumstances of the petitioner's acquisition of the right, title or interest in the property, any additional facts supporting the petitioner's claim, and the relief sought." 21 U.S.C. § 853(n)(3). These are not "simply technical requirements, but are construed strictly to discourage false or frivolous claims." *United States v. Ceballos-Lepe*, 977 F. Supp. 2d 1085, 1088–89 (D. Utah 2013) (citing *United States v. Ginn*, 799 F. Supp. 2d 645, 647 (E.D. La. 2010); *United States v. Burge*, 829 F. Supp. 2d 664, 667 (C.D. Ill. 2011)).

The Government argues that the Petition fails to satisfy these requirements by not setting forth the "time and circumstances" of Mr. Preston's acquisition of his interest in the Cash. The Government further argues that the Petition does not offer sufficient information concerning the alleged closure of Ms. Preston's 1295 Account that required her to transfer the Cash to Mr.

Preston's 2092 Account. As support, the Government observes that the Petition does not allege various details, such as when Merrill Lynch informed Ms. Preston that she needed to close the account, how Merrill Lynch notified her, and what Merrill Lynch specifically told her.[6] *See* Motion to Dismiss at 7.

The Government also asks the Court to consider other evidence that the Government argues demonstrates the falsity of Mr. Preston's factual claim. *See id.* at 7 n.4. The Federal Rules of Criminal Procedure, however, require the Court to assume that the facts set forth in the Petition are true for purposes of ruling on a motion to dismiss. *See* Fed. R. Crim. P. 32.2(c)(1)(A); *Emor*, 785 F.3d at 677. The Court does not weigh evidence at this stage and therefore does not consider the additional evidence put forth by the Government, however strong it may appear to be.[7]

---

[6]   The Government also argues that the Petition's explanation, by its own terms, only applies to the transfer of the Securities and not the Cash. *See* Motion to Dismiss at 8. Indeed, the Petition (and Mr. Preston's opposition to the Motion to Dismiss) continually refer to "securities" but not cash. *See, e.g.,* Petition at 5 ("At the time of transfer of the securities, neither Mr. Preston nor Mrs. Preston intended that the funds be conveyed for Mr. Preston's benefit, nor did Mr. Preston receive a benefit."). The Petition also, however, refers to "Securities" as a defined term, and a close reading of the Petition indicates that its use of the term includes the Cash. The Petition defines the term as "securities valued at $202,029.27," the transfers of which are the subject of a parallel civil proceeding in which the Government seeks to void them as fraudulent. Petition at 2. In that parallel civil proceeding, the Government does not seek to void transfers of only "securities," but rather, it seeks to void transfers of the same Cash and Securities (which the Government alleges are valued at a total of $202,029.27) that are at issue in Mr. Preston's Petition. *See* Am. Compl., *United States v. James W. Preston, et al.*, Case No. 13-cv-00265 (RC) (D.D.C.), ECF No. 23. It appears, therefore, that the problem is merely one of improper terminology (inexplicably referring to cash as "securities"). The Court reads the Petition as alleging that Ms. Preston was forced to transfer both the Cash *and* the Securities because Merrill Lynch said that it would close her accounts, which is supported by the text of the Petition. *See* Petition at 2 (describing the transfers of the Securities and the Cash and describing "[t]he reason for the transfers").

[7]   By a separate motion, the Government also asks the Court to take judicial notice of a declaration by Greg Rose, in-house counsel for Merrill Lynch, which was filed in the parallel civil case that the Government has brought against Mr. and Ms. Preston. *See* Mot. Court Take Judicial Notice Public Record, ECF No. 70; Decl. Greg Rose, ECF No. 70-2. In his declaration,

The issue for purposes of the Motion to Dismiss is whether the Petition sets forth sufficient detail concerning the "time and circumstances" of the acquisition of Mr. Preston's interest in the Cash to satisfy the statutory requirement.  In interpreting the "time and circumstances" requirement, courts have held that a petition must "do more than state [the] interest in a conclusory fashion." *United States v. Kokko*, No. 06-cr-20065, 2007 WL 2209260, at *5 (S.D. Fla. July 30, 2007).  *E.g., United States v. Vithidkul*, No. 12-cr-624, 2014 WL 979206, at *2 (D. Md. Mar. 12, 2014) (faulting petitioners for stating only that they obtained property "through previous employment" without additional detail); *United States v. Fabian*, No. 11-cr-157, 2013 WL 150361, at *5 (W.D. Mich. Jan. 14, 2013) (dismissing petition for, among other things, failing to satisfy the time and circumstances requirement by indicating "merely a year (with or without a '?') or a range of years").

The Court finds that the Petition's allegations are sufficient to satisfy the requirements of Section 853(n)(3).  The Petition sets forth the date Ms. Preston transferred the Cash to Mr. Preston's 2092 Account and attaches an account statement that lists the two transfers.  *See* Petition Ex. 2 at 16.  It also sets forth the reason for these transfers by alleging that Merrill Lynch required closure of Ms. Preston's 1299 Account and that Mr. Preston paid full consideration for the Cash by paying Ms. Preston's debts in an equivalent value.  *See* Petition at 2–6.  The Petition contains more than merely a conclusory assertion of Mr. Preston's interest in the Cash.

---

Mr. Rose states that "[a]t no time did Merrill Lynch ask Mrs. Preston to close account xxx-x-1295" and that Merrill Lynch maintained Ms. Preston's 1295 Account until August 30, 2014, "when the account was purged from the Merrill Lynch system following thirteen months of inactivity." Decl. Greg Rose ¶ 1. The Court finds that there are ample grounds to dismiss the Petition without considering this declaration and therefore will deny the Government's motion to take judicial notice of the declaration as moot.

The Government also argues that the Petition does not set forth the "nature and extent" of Mr. Preston's interest in the Cash, solely because it does not state a claim for relief under Section 853(n)(6).  *See* Motion to Dismiss at 5–6.  The statute's text, however, does not expressly link the "nature and extent" requirement of Section 853(n)(3) to the grounds for relief under Section 853(n)(6).  The Court's reading of the statute indicates that the two provisions, while related, are separate and that a petitioner could satisfy the former while failing to plead a claim for relief under the latter.  The Court therefore finds that the Petition meets the pleading requirements of Section 853(n)(3) and separately assesses whether the Petition states a claim for relief under Section 853(n)(6).

### C.  Failure to State a Claim Under Section 853(n)(6)

While the Petition meets the pleading requirements of Section 853(n)(3), it fails to state a claim for relief under Section 853(n)(6).

In order to survive a motion to dismiss, a petition must allege facts sufficient to state a valid claim of relief.  *See Emor*, 785 F.3d at 678; *Church & Dwight Co.*, 510 F. App'x at 57.  A petitioner is only entitled to relief if he establishes that his legal right, title, or interest in the forfeited property meets the circumstances set forth in either Section 853(n)(6)(A) or Section 853(n)(6)(B), and, therefore, he must allege facts sufficient to state a claim under one of the two provisions.  *See United States v. Hailey*, 924 F. Supp. 2d 648, 658 (D. Md. 2013) ("The availability of a motion to dismiss indicates that to state a claim, one of the § 853(n)(6) bases must be pled.").

As the Government observes, it is unclear from the Petition whether Mr. Preston is pleading under Section 853(n)(6)(A) or Section 853(n)(6)(B).  *See* Motion to Dismiss at 7–8.  Such a deficiency can be fatal to a petition.  *See, e.g., United States v. Ceballos-Lepe*, 977 F.

Supp. 2d 1085, 1090 (D. Utah 2013) (dismissing a petition in part because the petitioner did not "specif[y] in her petition whether her interest comes under § 853(n)(6)(A) or (6)(B)"). The Petition does not specifically cite Section 853(n)(6) and it uses language that is similar to both Section 853(n)(6)(A) and Section 853(n)(6)(B). *See, e.g.,* Petition at 5 (stating as a section heading that "Mr. Preston's right, title and interest . . . is superior to Mrs. Preston's interest . . . ."); *id.* (stating that "Mr. Preston's equivalent exchange made him a bona fide purchase [sic] for value as contemplated by 21 U.S.C. § 853(n) because he did not know that paying full value for [the Cash and the Securities] could subject him to any liability nor did he receive any financial benefit for the exchange"); *id.* (stating that "Mrs. Preston received full consideration for her transfer"); *id.* at 6 (requesting that the Court modify the Order of Forfeiture "to reflect that Mr. Preston has a superior right, title and interest to the funds"). Even Mr. Preston's response to the Government's observation in his opposition to the Motion to Dismiss fails to clear the confusion. *See* James W. Preston's Opp. Pl.'s Mot. Dismiss at 1, ECF No. 63 (arguing that the Court should deny the Motion to Dismiss because it "fails to establish that Mr. Preston does not have a superior right, title and interest to the funds").[8] Though Mr. Preston states that his claim "falls squarely under Section A," he also states, without explicitly referencing Section 853(n)(6)(B), that he "alternatively argued that '[his] equivalent exchange made him a bona fide purchaser for value' – a defense that is also applicable to this case." *Id.* at 6 (quoting Petition at 5). The Court

---

[8]   This argument also misstates the burden imposed by the criminal forfeiture statute. The statute requires the petitioner to establish the applicability of either of the criteria in Section 853(n)(6). *See* 21 U.S.C. § 853(n)(6). The Government is not required to establish anything in the ancillary proceeding. Moreover, during the motion to dismiss stage, the focus is on the sufficiency of the Petition and the Court must take all factual allegations in the Petition as true. *See* Fed. R. Crim. P. 32.2(c)(1)(A).

11

generously interprets the Petition (and Mr. Preston's subsequent explanation) to claim that both provisions are applicable in the alternative and will therefore address both of them.

1. Section 853(n)(6)(A)

To be successful under Section 853(n)(6)(A), a petitioner must establish that, "at the time of the commission of the acts which gave rise to the forfeiture," the interest in the forfeited property was vested in the petitioner rather than the defendant or the petitioner's interest was superior to any interest of the defendant. 21 U.S.C. § 853(n)(6)(A). It is clear from the face of the Petition that Mr. Preston did not have an interest in the Cash at the time of the commission of the acts which gave rise to its forfeiture, because Ms. Preston did not transfer the Cash to him until after the commission of those acts.

The Cash was included in the Order of Forfeiture as substitute property pursuant to Section 853(p), rather than as property subject to forfeiture under Section 853(a). Under Section 853(p), property becomes subject to forfeiture as substitute property when, as a result of any act or omission of the defendant, property subject to forfeiture under Section 853(a) meets one of five conditions. *See* 21 U.S.C. § 853(p)(1). When the Government sought to include the Cash in the Order of Forfeiture as substitute property, it argued that Ms. Preston's acknowledgement that she "diverted Clyde's money to pay her personal credit cards; charged corporate credit cards in Clyde's name to pay for her unauthorized personal expense; and used a Clyde's vendor paid by Clyde's funds to obtain goods for her personal use" was sufficient to demonstrate the satisfaction of one of those conditions. Gov't's Fourth Mot. Amend Order of Forfeiture at 7 (citing 21 U.S.C. § 853(p)(1)(B) (providing that property is subject to forfeiture as substitute property if property subject to forfeiture under Section 853(a) "has been transferred or sold to, or deposited with, a third party")). The Court agreed, finding that the Cash was subject to forfeiture under

12

Section 853(p).  *See* Fourth Amended Order at 2.  For purposes of Section 853(n)(6)(A), therefore, "the time of the commission of the acts which gave rise to the forfeiture" of the Securities was when Ms. Preston transferred the embezzled Clyde's funds to third parties.

Ms. Preston admitted that she transferred the embezzled Clyde's funds to third parties from 2001 to 2011.  *See* Statement of the Offense at 1.  The Petition alleges that she did not transfer the Cash to Mr. Preston until January 20, 2012.  *See* Petition at 2; Petition Ex. 2 at 16.  Mr. Preston does not allege that he acquired his interest in the Cash prior to the transfer, and, therefore, the Petition fails to state a claim under Section 853(n)(6)(A).

### 2. Section 853(n)(6)(B)

To be successful under Section 853(n)(6)(B), a petitioner must establish that he is a "bona fide purchaser for value" of the property and that, at the time of purchase, he was "reasonably without cause to believe that the property was subject to forfeiture." 21 U.S.C. § 853(n)(6)(B).  If the property at issue is cash, then in order to satisfy the former requirement, the petitioner must show that, in exchange for receiving the cash, he gave something or performed a service equivalent in value to the cash.

Mr. Preston does not allege facts that are sufficient to state a claim under this provision either.  Mr. Preston alleges that he is a bona fide purchaser for value of the Cash, because he paid Ms. Preston's debts in an equivalent value, which, if true, would demonstrate that he was a "bona fide purchaser for value."  *See* Petition at 2–5.  With respect to the second requirement, Mr. Preston alleges that he "did not know that paying full value for [the Cash and the Securities] could subject him to any liability."  *Id.* at 5.  This allegation, if true, is not sufficient to satisfy Section 853(n)(6)(B).  Even if Mr. Preston was an innocent bona fide purchaser of the Cash, he still must allege that he was without cause to believe that the Cash was subject to forfeiture.  *See*

*United States v. Jimerson*, 5 F.3d 1453, 1455 (11th Cir. 1993) (stating that Section 853 "does not contain an innocent owner provision" and that "alleged innocence, standing alone, cannot defeat the Government's interest in criminally forfeited property").  Whether he knew that he could be personally liable is not the correct standard.  The statute concerns knowledge regarding whether the property was subject to forfeiture.  Mr. Preston makes no allegations concerning his knowledge on this issue or whether a reasonable person would have known that the Cash was subject to forfeiture.  On the contrary, Mr. Preston actually alleges facts that, if true, would demonstrate the *inapplicability* of the bona fide purchaser provision.  According to the Petition, Ms. Preston was forced to transfer the Cash and the Securities to him because of her criminal activity, meaning that he was aware at the time of the transfers that Ms. Preston was subject to criminal liability.  Even more significantly, if the transfer had been made with the intention that the Cash would be used to satisfy Ms. Preston's restitution obligation, as he alleges, then Mr. Preston was well aware that the Cash was subject to forfeiture.

On the face of the Petition, it is implausible that Mr. Preston was a bona fide purchaser for value who was reasonably without cause to believe that the Cash was subject to forfeiture.  The Petition therefore also fails to state a claim for relief under Section 853(n)(6)(B).

## IV.  CONCLUSION

For the foregoing reasons, the Court grants the Government's Motion to Dismiss James Preston's Petition Asserting an Interest in Cash Forfeited from Merrill Lynch Account Number XXX-X2092, ECF No. 60.  An order consistent with this Memorandum Opinion is separately and contemporaneously issued.

Dated:  August 24, 2015                                             RUDOLPH CONTRERAS
                                                                                          United States District Judge