**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | |
| | : | |
| v. | : | Criminal Action No.: 12-00189 (RC) |
| | : | |
| NANCY PRESTON, | : | Re Document No.:   59 |
| | : | |
| Defendant. | : | |

**MEMORANDUM OPINION**

**GRANTING GOVERNMENT'S MOTION TO DISMISS LAURA PRESTON'S CO-PETITION**

**I. INTRODUCTION**

Defendant Nancy Preston ("Ms. Preston") was convicted of Mail Fraud in violation of 18 U.S.C. § 1341, and on December 12, 2014, this Court entered a Final Order of Forfeiture forfeiting $239,069 to the United States in the form of a money judgment pursuant to 18 U.S.C. § 981(a)(1)(C) and 28 U.S.C. § 2461(c). *See* Final Order of Forfeiture ("Final Order"), ECF No. 22. On June 17, 2014, the Court amended the Final Order pursuant to Federal Rule of Criminal Procedure 32.2(e)(2)(A) to include as substitute property pursuant to 21 U.S.C. § 853(p) cash in one Merrill Lynch account held by Ms. Preston's husband, James Preston, and certain securities in a separate Merrill Lynch account held by the James W. Preston Trust (the "Trust"). *See* Fourth Amended Order of Forfeiture ("Fourth Amended Order" or "Order of Forfeiture"), ECF No. 43. On July 29, 2014, James Preston filed a Petition asserting an interest in the substitute property pursuant to Federal Rule of Criminal Procedure 32.2 and 21 U.S.C. § 853(n). *See* James W. Preston's Petition Asserting an Interest in Property ("Mr. Preston's Petition"), ECF No. 48. On August 25, 2014, Laura Preston, the daughter of Mr. Preston and alleged beneficiary of the Trust Account, filed a separate Petition asserting an interest in the substitute property held

by the Trust which incorporates Mr. Preston's Petition in its entirety. *See* Laura Preston's Co-Petition Asserting an Interest in Property (the "Petition"), ECF No. 56.

The Government has filed a motion to dismiss the Petition. *See* Mot. Dismiss Laura Preston's Co-Petition ("Motion to Dismiss"), ECF No. 59. For the reasons explained below, the Court will grant the Government's motion.

## II. FACTUAL BACKGROUND[1]

From approximately 1992 to September 2011, Ms. Preston was the Corporate Controller for Clyde's Restaurant Group ("Clyde's"). *See* Statement of the Offense at 1, ECF No. 6. On January 9, 2012, Ms. Preston confessed to agents of the Federal Bureau of Investigation ("FBI") that she had embezzled hundreds of thousands of dollars from Clyde's. *See* Decl. Supp. Gov't's Mot. Amend Order Forfeiture ¶ 4, ECF No. 42-1.

A statement for Merrill Lynch account number XXX-X3888 held by the Trust (the "Trust Account") indicates that the Trust was formed under an agreement dated eleven days after Ms. Preston's confession. *See* Mr. Preston's Petition Ex. 3, ECF No. 48-1.[2] Laura Preston alleges that she is the beneficiary of the Trust Account and that Mr. Preston is the trustee of the Trust Account. *See* Petition at 1. Three days later, on January 23, 2012, various securities (the "Securities") were transferred from Merrill Lynch account number XXX-X1295 held by Ms. Preston ("Ms. Preston's 1295 Account") to a separate account held by Mr. Preston, Merrill

---

[1] Apart from asserting an interest as the beneficiary of the Trust Account and alleging that Mr. Preston is the trustee of the Trust Account, Laura Preston makes no factual allegations in her Petition. The Court almost entirely relies on the factual allegations in Mr. Preston's Petition, which Laura Preston's Petition incorporates, for its summary of the factual background.

[2] Mr. Preston filed all of the exhibits to his Petition as one attachment. *See* ECF No. 48-1. The Court's page citations are to the page numbers of that attachment, rather than the page numbers of the individual exhibits.

Lynch account number XXX-X1299 ("Mr. Preston's 1299 Account").  Mr. Preston's Petition at 2; Mr. Preston's Petition Ex. 1 at 10.[3]  In his Petition, Mr. Preston alleges that "[t]he reason for the transfers is simple:  Once Merrill Lynch discovered Mrs. Preston's criminal activity, it closed her account, forcing Mrs. Preston to transfer her funds to Mr. Preston's account."  Mr. Preston's Petition at 2.  Soon thereafter, the Securities were transferred from Mr. Preston's 1299 Account to the Trust Account.  *See* Mr. Preston's Petition at 2.  Neither Mr. Preston nor Laura Preston offer any explanation for this transfer in their Petitions.

Mr. Preston alleges that neither he nor Ms. Preston intended for him to receive a benefit as a result of the transfers and that he received no benefit.  *See* Mr. Preston's Petition at 2–5.  He alleges that Ms. Preston transferred the Securities and the Cash to him "so that he could pay her debts."  *Id.* at 5.  He further alleges that, in order to pay those debts, rather than use the Cash or liquidate the Securities, he "liquidated his own securities of the same value [as the Securities and the Cash[4]] because liquidating those securities would result in a lower tax liability for the Prestons."  *Id.* at 2.  Mr. Preston claims that he used the proceeds of that liquidation in order to pay $150,000 to the Government in a pre-judgment partial payment of Ms. Preston's restitution obligation, Ms. Preston's legal fees, and federal and state taxes.  *See id.* at 3.  As support, Mr. Preston cites a November 2012 account statement for the Trust Account, which lists an outgoing wire transfer of $150,000 on November 19, 2012.  *See* Mr. Preston's Petition Ex. 3 at 33.  He

---

[3]     In his Petition, Mr. Preston states that the total value of the Securities at the time of the transfer to Mr. Preston's 1299 Account was $190,567.41.  *See* Petition at 2.  From the account statement for Mr. Preston's 1299 Account provided as an exhibit to the Petition, however, the total value at the time of the transfer appears to have been $190,529.27.  *See* Petition Ex. 1 at 10; *see also* McAllister Decl. ¶ 7 (alleging a total value of $190,529.27 and providing values for each of the securities matching the account statement).

[4]     Throughout his Petition, Mr. Preston confusingly refers to both the Securities and the Cash collectively as "the Securities."  *See* Petition at 2.  The implications of this confusing terminology are discussed, *infra*.

also provides Ms. Preston's federal tax return for 2012 and a ledger from Cameron McEvoy, PLLC.  *See* Mr. Preston's Petition Exs. 4–5.  Neither Mr. Preston nor Laura Preston provide detail concerning which securities Mr. Preston liquidated or which account held those securities, and neither provide any explanation for why the payment for Ms. Preston's restitution obligation was made from the Trust Account.  Neither explain how liquidating securities helped Mr. Preston avoid tax liability that he would have incurred had he used the Cash to make the restitution payment or why generally he could not use the Cash to make that payment.

On August 29, 2012, the Government filed a Criminal Information against Ms. Preston in this Court, and on September 26, 2012, Ms. Preston pleaded guilty to mail fraud in violation of 18 U.S.C. § 1341.  *See* Information, ECF No. 1; Minute Entry (Sept. 26, 2012).  On September 26, 2012, the Court entered a Consent Order of Forfeiture forfeiting $389,069 to the United States in the form of a money judgment.  *See* Consent Order of Forfeiture, ECF No. 9.  On December 9, 2012, after the wire transfer from the Trust Account, the Government filed a consent motion seeking to reduce the forfeiture money judgment amount by $150,000 to account for "a partial payment to the victim as compensation for its loss."  Consent Mot. for Final Order of Forfeiture, ECF No. 17.  On December 12, 2012, the Court granted the consent motion, entering a Final Order of Forfeiture forfeiting $239,069 to the United States in the form of a money judgment pursuant to 18 U.S.C. § 981(a)(1)(C) and 28 U.S.C. § 2461(c).  *See* Final Order.  The Final Order provided that the Court shall retain jurisdiction to enforce the Final Order and to amend it as necessary pursuant to Federal Rule of Criminal Procedure 32.2(e).  *See id.*

On June 17, 2014, the Court amended the Final Order to include the Cash and the Securities in the Trust Account as substitute property pursuant to 21 U.S.C. § 853(p).  *See* Fourth

Amended Order. The Government served the Fourth Amended Order on Mr. Preston, his counsel (which is the same counsel representing Laura Preston with respect to her Petition), and the Trust on July 3, 2014. *See* Notice of Service, ECF No. 51. The Government later served the Fourth Amended Order on Laura Preston by mail, and the Government's Notice of Service indicates that it sent the Fourth Amended Order on July 8, 2014 and that it was received on July 11, 2014. *See* Notice of Service, ECF No. 51; Notice of Service Ex. A, ECF No. 51-1. On July 29, 2014, Mr. Preston filed his Petition asserting his interest in the substitute property.[5] *See* Mr. Preston's Petition.

On August 25, 2014, Laura Preston filed her Petition, which consists of only two substantive paragraphs. *See* Petition ¶¶ 1–2. In the first paragraph, she alleges that she is the daughter of Mr. Preston and the beneficiary of the Trust Account. *See id.* ¶ 1. She also alleges that Mr. Preston is the trustee of the Trust Account and she "authorizes James Preston to fully litigate this matter in his own name or on her behalf, as beneficiary," citing no legal authority for that power. *Id.* In the second paragraph, she asserts that "to the extent that Laura Preston has a separate right, title and interest in [the Trust Account] that cannot be asserted by James Preston, she asserts such interest herein fully incorporates" Mr. Preston's Petition. *Id.* ¶ 2.

---

[5] In his Petition, Mr. Preston alternatively requests that, if the Court finds that the Securities and the Cash are subject to forfeiture, then the "Government refund him the $150,000 sum he paid to satisfy Mrs. Preston's restitution obligation, as that was not intended to be a gift made to Mrs. Preston." Petition at 6. He does not, however, request that the Court compel the Government to refund the payment, which appears to have already been paid to Clyde's, let alone provide any legal authority for the Court to do so. Laura Preston did not reference this request in her Petition, and the Court also notes that Laura Preston does not reaffirm the request in her opposition to the Motion to Dismiss.

### III.  ANALYSIS

The Government argues that the Petition should be dismissed, because:  (1) the Petition fails to establish constitutional standing; (2) the Petition fails to establish statutory standing and is time-barred; (3) the Petition fails to satisfy the pleading requirements of 21 U.S.C. § 853(n)(3); and (4) the Petition fails to state a claim for relief under 21 U.S.C. § 853(n)(6).  The Court addresses the issues of constitutional and statutory standing below.  Because the Court finds that the Petition is clearly time-barred and lacks statutory standing, the Court does not reach the remainder of the Government's arguments.

#### A.  Legal Framework for Adjudication of Third Party Interests

As a preliminary matter, it is useful for the Court to provide an overview of the legal framework for adjudicating a third party's asserted interest in property that has been ordered forfeited to the United States.

"The sole forum for a third party to address its interest in forfeited property is through a third party ancillary proceeding" under 21 U.S.C. § 853(n).  *United States v. Emor*, 785 F.3d 671, 675 (D.C. Cir. 2015) (citing 21 U.S.C. § 853(n)).  Any third party asserting a "legal interest" in forfeited property "may, within thirty days of the final publication of notice or his receipt of notice . . . whichever is earlier, petition the court for a hearing to adjudicate the validity of his alleged interest in the property."  21 U.S.C. § 853(n)(2).  A petitioner under Section 853(n) must have standing under Article III of the Constitution.  *See Emor*, 785 F.3d at 676.  A petitioner must also have so-called "statutory standing," which is "nothing more than an inquiry into whether the statute at issue conferred a 'cause of action' encompassing 'a particular plaintiff's claim.'"  *Id.* at 677 (quoting *Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 134 S.Ct. 1377, 1387 (2014).  The statute also requires a petition to set forth "the nature and

extent of the petitioner's right, title, or interest in the property, the time and circumstances of the petitioner's acquisition of the right, title, or interest in the property, any additional facts supporting the petitioner's claim, and the relief sought." 21 U.S.C. § 853(n)(3).

"Congress did not intend section 853(n) to serve as a vehicle by which *all* innocent third parties who are aggrieved by an order of criminal forfeiture can petition for judicial relief." *United States v. Lavin*, 942 F.2d 177, 185 (3d Cir. 1991). Rather, in order to be successful under Section 853(n), a petitioner must establish by a preponderance of the evidence that his legal right, title, or interest in the property meets the circumstances set forth in one of two provisions. *See* 21 U.S.C. § 853(n)(6). If a petitioner does not meet either of these sets of criteria, then he is not entitled to relief.

Rule 32.2 of the Federal Rules of Criminal Procedure provides that, in an ancillary proceeding concerning a petition under Section 853(n), "the court may, on motion, dismiss the petition for lack of standing, for failure to state a claim, or for any other lawful reason." Fed. R. Crim. P. 32.2(c)(1)(A). A motion to dismiss a petition under Section 853(n) prior to discovery or a hearing is treated similarly to a motion to dismiss a civil complaint under Federal Rule of Civil Procedure 12(b). *See Willis Mgmt. (Vt.), Ltd. v. United States*, 652 F.3d 236, 241–42 (2d Cir. 2011). "A third-party petition must only provide 'enough facts to state a claim to relief that is plausible on its face' to survive dismissal." *United States v. Church & Dwight Co.*, 510 F. App'x 55, 57 (2d Cir. 2013) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). When considering a motion to dismiss a petition, the Court assumes all facts set forth in the petition to be true. *See* Fed. R. Crim. P. 32.2(c)(1)(A).

### B. Constitutional Standing

The Government argues that Laura Preston fails to establish that she has standing under Article III of the Constitution to challenge the forfeiture of the Securities. *See* Motion to Dismiss at 4–5. The Court must determine whether Mr. Preston has constitutional standing as a threshold matter. *See Emor*, 785 F.3d at 676. "The requirements for a petition to demonstrate constitutional standing to challenge a forfeiture are very forgiving." *Id.* (internal quotation omitted). In this Circuit, "[i]n general, any colorable claim on the property suffices, if the claim of injury is 'redressable, at least in part, by a return of the property.'" *Id.* (quoting *United States v. 7725 Unity Ave. N.*, 294 F.3d 954, 957 (8th Cir. 2002)). In determining whether to dismiss a petition on jurisdictional grounds, such as standing, courts may consider evidence outside the petition. *See Emor*, 785 F.3d at 677.

The Court finds that Laura Preston has constitutional standing to assert an interest in the Securities. In her Petition, Laura Preston asserts that she is the beneficiary of the Trust Account and therefore has an interest in property held by the Trust Account. *See* Petition ¶ 1. This is a sufficient "colorable claim" on the Securities, which are held by the Trust Account. Laura Preston also alleges, through her incorporation of Mr. Preston's Petition, that funds from the Trust Account were used to pay Ms. Preston's debts in exchange for the Securities. *See* Mr. Preston's Petition at 2. She therefore alleges that the forfeiture of the Securities will cause a loss to the Trust Account and that the loss is redresssable by returning the Securities to the Trust Account.

### C. Statutory Standing

Although Laura Preston has constitutional standing, it is clear that she lacks statutory standing to assert her claim to the Securities, because her Petition is time-barred.

The Supreme Court has acknowledged that the term "statutory standing" is somewhat "misleading." *Lexmark Int'l v. Static Control Components, Inc.*, 134 S. Ct. 1377, 1387 n.4 (2014).  The D.C. Circuit recently clarified in *Emor* that "[s]tatutory standing is not really about standing at all, in the sense that it limits a 'court's statutory or constitutional *power* to adjudicate the case.'  Instead, statutory standing is nothing more than an inquiry into whether the statute at issue conferred a 'cause of action' encompassing 'a particular plaintiff's claim.'" *Emor*, 785 F.3d at 677 (quoting *Lexmark Int'l*, 134 S. Ct. at 1387).  Essentially, the Court must determine whether Mr. Preston falls within the class of persons whom Congress authorized to file a petition in an ancillary proceeding.  *See Lexmark Int'l*, 134 S. Ct. at 1387.

The statute authorizes third parties to assert a legal interest in property which has been ordered forfeited to the United States only if they file their petition "within thirty days of the final publication of notice or his receipt of notice under [Section 853(n)(1)], whichever is earlier." 21 U.S.C. § 853(n)(2).  "If a third party chooses not to file a petition within the prescribed thirty days . . . she forfeits her interests in the property."  *United States v. Marion*, 562 F.3d 1330, 1337 (11th Cir. 2009).

The Government served the Fourth Amended Order on Mr. Preston, his counsel (the same counsel representing Laura Preston with respect to her Petition), and the Trust on July 3, 2014.  *See* Notice of Service, ECF No. 51.  The Government later served Laura Preston directly after obtaining her address from her counsel.  The Government's Notice of Service indicates that it sent the Fourth Amended Order to Laura Preston on July 8, 2014 and that it was received on July 11, 2014.  *See* Notice of Service; Notice of Service Ex. A.  The delivery appears to have been accepted by Mr. Preston.  *See* Notice of Service Ex. A.  Laura Preston does not claim that she did not receive the Fourth Amended Order or otherwise challenge the sufficiency or date of

service. Instead, she argues that her Petition, which she filed on August 25, 2014 is not time-barred because she filed it within 30 days of the end of the Government's publication of the Fourth Amended Order on July 26, 2015. *See* Laura Preston's Opp. Pl.'s Mot. Dismiss at 7–8.

This argument ignores the text of the statute, which clearly provides that any petition must be filed within 30 days of either the end of publication or receipt of notice, *whichever is earlier*. *See* 21 U.S.C. § 853(n)(2). At the latest, Laura Preston received notice on July 11, 2014, and, therefore, the filing of her Petition on August 25, 2014 was untimely and she lacks statutory standing to assert an interest in the Securities. Her Petition must be dismissed.

## IV.  CONCLUSION

For the foregoing reasons, the Court grants the Government's Motion to Dismiss Laura Preston's Co-Petition, ECF No. 59. An order consistent with this Memorandum Opinion is separately and contemporaneously issued.

Dated:  August 24, 2015                                                    RUDOLPH CONTRERAS
                                                                                                 United States District Judge